AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

FILED
CLERK, U.S. DISTRICT COURT

June 8, 2025

CENTRAL DISTRICT OF CALIFORNIA
BY: ___CLD___ DEPUTY

United States of America,

v.

JACOB DANIEL TERRAZAS,

Defendant.

Case No. 2:25-mj-03511-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, Jasmin Garibay, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date of June 7, 2025, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111 | Assault on a Federal Officer |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Jasmin Garibay, Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: June 8, 2025 at 3:53 p.m.

Judge's signature

City and state: Los Angeles, California

Hon. Jacqueline Chooljian, U.S. Magistrate Judge
Printed name and title

AUSA: Joshua J. Lee x3183

## AFFIDAVIT

I, Jasmin Garibay, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against Jacob Daniel TERRAZAS ("TERRAZAS") for a violation of Title 18, United States Code, Section 111 (Assault on a Federal Officer).

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only and all dates and times are on or about those indicated.

### II. BACKGROUND OF SPECIAL AGENT JASMIN GARIBAY

3. I am a Special Agent with the United States Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI"), and have been since April 2024. I am currently assigned to the Orange County, California Field Office.

4. As part of my daily duties as an HSI Special Agent, my responsibilities include the investigation of criminal violations, to include violations related to assault on federal officers and/or agents. I have also received training and have

conducted and/or assisted in investigations involving the violation of laws pertaining to drug trafficking, bulk cash smuggling, money laundering, gangs, human smuggling, and human trafficking. I am a graduate of the Criminal Investigator Training Program and the HSI Special Agent Basic Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia. Prior to my tenure as an HSI Special Agent, I was employed by Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO"), as a Deportation Officer. I was employed with ERO since July 2019. Prior to my tenure as an HSI Special Agent, I was employed by DHS, U.S. Customs and Border Protection("CBP") as a CBP Officer. I was employed with CBP since November 2015.

### III. STATEMENT OF PROBABLE CAUSE

5. Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A.   Protest at HSI Office in Paramount, California**

6. On Friday, June 6, 2025, HSI and its federal law enforcement partners conducted an enforcement operation in the city of Los Angeles, California that resulted in a massive protest throughout Los Angeles.

7. On Saturday, June 7, 2025, individuals became aware of an HSI office located at 6321 Alondra Boulevard, Paramount, California, at approximately 10:00 a.m. Shortly thereafter, news of the protest began to spread across multiple social media

platforms and began to attract numerous people who joined the protest.

        **B.    TERRAZAS Was Actively Throwing Hard Objects at Border Patrol Agents, Resulting in a Bloody Wound**

        8.    According to two border patrol agents ("BPAs"), who were present at the protest in Paramount, TERRAZAS was identified as one of several individuals that was actively throwing hard objects from behind a tree, which the BPAs believed were remnants of cinderblock and rocks, towards the agents.

        9.    The first BPA ("BPA 1") stated to me that TERRAZAS was actively hiding behind a tree that had a makeshift shield leaning against it and continuously rushed towards the BPAs to throw hard objects at them.  BPA 1 believed that those hard objects were remnants of cinderblock.

        10.   BPA 1 then felt one of those remnants of cinderblock impact his left shin.  A photo was taken of the injury, depicting a bloody wound to BPA 1's left shin.  BPA 1 further stated that he removed himself from the front lines to mend to his injury, but later realized he could still walk and stand.  As such, BPA 1 returned to the front lines.  BPA 1 deployed less lethal force pepper balls when he saw TERRAZAS rushing towards the BPAs again with his arm wound back in an active attempt to throw more remnants of cinderblock at the agents.

        11.   Despite BPA 1's efforts, TERRAZAS continued to rush back and forth from the tree where he was hiding to continue to throw more remnants of cinderblock at the agents.  BPA 1

identified TERRAZAS from a distance, wearing a black beanie and black mask covering the lower half of his face.

12. BPA 1 stated that the Border Patrol Tactical Unit ("BORTAC") arrived on scene and took custody of several individuals, including TERRAZAS. It was at this time that BPA 1 identified TERRAZAS.

13. BPA 1 stated that his partner, BPA 2, was also struck but did not sustain any injuries, due to the protection of his gas mask and vest.

14. BPA 2 stated to me that TERRAZAS and many other individuals were actively throwing rocks at BPAs for approximately three hours. BPA 2 stated that TERRAZAS was approximately 100 feet away from the agents on the front lines and was able to identify TERRAZAS from that distance, wearing a black beanie and black mask covering the lower half of his face.

15. According to BPA 2, TERRAZAS utilized bushes and a tree to conceal himself and gather more rocks. TERRAZAS would use those rocks to continuously rush towards the BPAs and throw rocks at them. BPA 2 was struck by the rocks but did not sustain any injuries due to the protection of his gas mask and vest.

16. Less lethal force was then deployed and BPA 2 saw TERRAZAS utilizing a makeshift shield to protect himself from the pepper balls. Despite BPAs efforts, TERRAZAS continued to throw rocks at the agents.

17. BPA 2 stated that the BORTAC arrived on scene and took custody of several individuals, including TERRAZAS. It was at this time that BPA 2 identified TERRAZAS.

18. BPAs arrested TERRAZAS, who was later transported to the HSI Field Office located in Santa Ana, California.

## IV. CONCLUSION

19. For all of the reasons described above, there is probable cause to believe that TERRAZAS has committed a violation of Title 18, United States Code, Section 111 (Assault on a Federal Officer).

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this  8th  day of
June 2025 at 3:53 p.m.

HON. JACQUELINE CHOOLJIAN
UNITED STATES MAGISTRATE JUDGE